UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STEVEN L. SMITH,

Plaintiff,

-against-

I.R.C. LIOIDICE, WARDEN GRIFFIN, and DEP.
COLLADO, in their official and individual capacities,

Defendants.

17-cv-7028 (NSR)

OPINION & ORDER

---

NELSON S. ROMÁN, United States District Judge:

Plaintiff Stephen L. Smith ("Plaintiff" or "Smith"), proceeding *pro se*, commenced the instant action on September 14, 2017. (*See* Complaint ("Compl."), ECF No. 2.) In this action, Plaintiff alleges claims pursuant to 42 U.S.C. § 1983 against Defendants I.R.C. Lioidice, Warden Griffin, and Dep. Collado (together, "Defendants"). Specifically, Plaintiff alleges that Defendants violated his rights under the First Amendment to the United States Constitution and the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.§ App. 2, by delaying the filing of paperwork that would transfer him to the custody of another state where criminal charges were pending against him, and by retaliating against him for filing administrative grievances.

Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6), Defendants have moved to dismiss the Complaint. (*See* ECF No. 31.) For the following reasons, Defendants' motion to dismiss is GRANTED.

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3|2|2020

# BACKGROUND

## I.    Factual Allegations

The following facts are derived from the Complaint and are taken as true and constructed in the light most favorable to *pro se* Plaintiff for the purposes of this motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016).

Plaintiff filed this claim while he was incarcerated at the Green Haven Correctional Facility.  (*See* Compl. at 1.)  He alleges that Inmate Records Clerk ("I.R.C.") Michele Lioidice ("Lioidice"), Warden Griffin ("Griffin"), and Deputy Collado ("Collado") unduly delayed the processing and filing of paperwork—his Interstate Agreement on Detainers ("IAD") forms— which would transfer him to the custody of another state where criminal charges were pending against him.  In addition, he appears to claim that Lioidice further delayed filing his forms in retaliation against Plaintiff's exercise of his First Amendment right to file grievances.

### a.    Delay in Filing IAD Forms

Plaintiff asserts that he filed IAD forms with Defendant Lioidice in June 2016 with a request to "file ASAP," and that Plaintiff made "numerous requests" for updates on the status of those forms.  (*See id.*, Details of the Facts, at ¶¶ 4–6.)  After he did not receive a response, Plaintiff filed a grievance on September 12, 2016 (GH-84096-16).  (*See id.* at ¶ 6, Ex. A at 11.)  In October 2016, Plaintiff followed up with Sergeant Velardo regarding his grievance and also wrote to Deputy Williams to seek to resolve to his request.  (*See id.* at ¶¶ 7–9, Exs. D and E.)  Plaintiff alleges he did not receive a reply to his grievance, and that he then wrote to Defendant Griffin regarding this matter and did not receive a response.  (*See id.* at ¶ 10, Ex. F.)  Plaintiff claims he proceeded to write to the Commissioner of the New York State Department of Corrections and Community Supervision regarding his grievance on November 30, 2016.   (*See id.* at ¶¶ 11.)  He

received a grievance hearing on December 14, 2016, and received a reply from the Commissioner's staff via letter, also dated December 14, 2016.  (*See id.* at ¶¶ 11–12.)  Plaintiff alleges that a copy of that reply was also sent to Defendant Griffin.  (*See id.* at ¶ 11.)

On December 13, 2016, the day before his grievance hearing, Plaintiff allegedly received Defendant Lioidice's response to the grievance.  (*See id.* at ¶ 12.)  Plaintiff claims that Defendant Lioidice acknowledged being "aware that [Plaintiff] filed a grievance and wrote to the Warden."  (*See id.* at ¶ 16.)  Plaintiff further alleges that Lioidice's explanation for the delay was that the "office was understaffed" and that they "could not use [Plaintiff's] forms.  W[e] have our own forms we use." (*See id.* at ¶ 17.)  Plaintiff asserts that as a result of that hearing, Defendant Lioidice was directed to process the IAD request "ASAP."  (*See id.* at ¶ 16.)

### b.  Events Following Plaintiff's Grievance Hearing

Plaintiff claims that following the hearing, Defendant Lioidice continued to delay filing his IAD forms and, in a letter dated February 6, 2017, lied about Plaintiff being "called down to have the forms signed." (*See id.* at ¶¶ 18–20.)  He alleges that Lioidice "did so maliciously and retaliated [against him] by intentionally delaying the processing of [the] forms for another 67 days after being directed to have them signed ASAP."  (*See id.* at ¶ 22.)  Plaintiff responded to Lioidice's letter on February 8, 2017, explaining that he had not refused any call outs nor been notified of any call outs by her office.  (*See id.* at ¶ 24.)  On February 15, 2017, Lioidice called Plaintiff out to sign the forms.  (*See id.*)

Plaintiff claims that he informed Defendant Griffin of the continued delays and filed an administrative appeal in order to exhaust his administrative remedies and because he was not satisfied with Lioidice's explanation that the office was understaffed.  (*See id.* at ¶ 17.)  Plaintiff alleges that Defendant Collado denied his appeal and asserts that this denial provided a "rubber

stamp[]" to Defendant Lioidice's retaliation, "cover[ed] up for [Defendant] Lioidice[,] and "harmed [Plaintiff] further by hindering his efforts to seek redress." (*See id.* at ¶ 23.)

Plaintiff further appealed Collado's denial via a CORC-level appeal. (*See id.* at ¶ 25.) By letter dated March 23, 2017, Plaintiff was informed that this appeal was sent to Albany for a decision. (*See id.* at ¶ 26.) As of the date of the Complaint, Plaintiff had not received a decision of this appeal. (*See id.*)

In May and June 2017, Plaintiff requested that IRC Lioidice provide proof of mailing the IAD forms. (*See id.* at ¶ 28.) On August 21, 2017, Lioidice confirmed to Plaintiff that the IAD forms were mailed out on February 15, 2017. (*See id.* at ¶ 32.)

Plaintiff claims that because of these delays he could not resolve his outstanding Connecticut warrant before being released on parole and lost his "opportunity [to] receive a concurrent sentence." (*See id.* at 9.)

## LEGAL STANDARDS

### I.    12(b)(1)

Under Rule 12(b)(1), a "case is properly dismissed for lack of subject matter jurisdiction . . . when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). In resolving a 12(b)(1) motion, courts "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). However, courts must also decide "issues of fact by reference to evidence outside the pleadings, such as affidavits." *Id.* (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d. Cir. 2003)). In such cases, a "plaintiff asserting subject matter

4

jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113.

## II.    12(b)(6)

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). Factual allegations must "nudge [a plaintiff's] claim from conceivable to plausible." *Twombly*, 550 U.S. at 570. A claim is plausible when the plaintiff pleads facts which allow the court to draw a reasonable inference the defendant is liable. *Iqbal*, 556 U.S. at 678. To assess the sufficiency of a complaint, the court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Rothstein v. UBS AG*, 708 F.3d 82, 94 (2d Cir. 2013). While legal conclusions may provide the "framework of a complaint," "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678–79.

Further, a court is generally confined to the facts alleged in the complaint for the purposes of considering a motion to dismiss pursuant to 12(b)(6). *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). A court may, however, consider documents attached to the complaint, statements or documents incorporated into the complaint by reference, matters of which judicial notice may be taken, public records, and documents that the plaintiff either possessed or knew about, and relied upon, in bringing the suit. *See Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

*Pro se* complaints are to be liberally construed. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). They must be held to less stringent standards than complaints written by lawyers, and only

dismissed when the plaintiff can prove "no set of facts in support of his claim which would entitle him to relief." *Estelle*, 429 U.S at 106 (quoting *Conley v. Gibson*, 335 U.S. 41, 45–46 (1957)). This "is particularly so when the *pro se* plaintiff alleges that [his] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). *Pro se* complaints must be interpreted as raising the strongest claims they suggest, but "must still state a plausible claim for relief." *Hogan v. Fischer*, 738 F.3d 509, 515 (2d Cir. 2013).

## III.    42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274 F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### I.    Exhaustion

As a threshold matter, Defendants contend that Plaintiff's claims should be dismissed due to Plaintiff's failure to exhaust his administrative remedies. The Prison Litigation Reform Act

("PLRA") precludes the filing of an action "with respect to prison conditions under [42 US.C. § 1983] . . . by a prisoner confined in any jail, prison or other correction facility until such administrative remedies as are available are exhausted." *See* 42 U.S.C. § 1997e(a). Whether an inmate has exhausted all administrative remedies turns on a review of "the state prison procedures [available] and the prisoner's grievance. . . ." *See Espinal v. Goord*, 558 F.3d 119, 124 (2d Cir. 2009) (citing *Jones v. Bock*, 549 U.S. 199, 218 (2007)); *see also Ross v. Blake*, 136 S Ct 1850, 1862 (2016) ("An inmate need exhaust only such administrative remedies as are 'available.'"). Grievances at the New York State correctional facilities are governed by the Inmate Grievance Program ("IGP"), which is based on a three-tiered system. *Id.* at 125. To adjudicate an inmate complaint: "(1) the prisoner files a grievance with the Inmate Grievance Resolution Committee ("IGRC"), (2) the prisoner may appeal an adverse decision by the IGRC to the superintendent of the facility, and (3) the prisoner then may appeal an adverse decision by the superintendent to the Central Office Review Committee ("CORC"). *Id.*; *see also* 7 N.Y.C.R.R. § 701.5. The relevant regulations provide that CORC shall render a written decision within thirty calendar days of receipt of the appeal. *See* 7 N.Y.C.R.R. § 701.5.

Notably, exhaustion is an affirmative defense, not a pleading requirement; thus, inmate plaintiffs need not "specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, Defendants must demonstrate lack of exhaustion. *Colon v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7432(NSR), 2017 WL 4157372, at *5 (S.D.N.Y. Sept. 15, 2017) (citing *Key v. Toussaint*, 660 F. Supp. 2d 518, 523 (S.D.N.Y. 2009)). Dismissal on a 12(b)(6) motion for failure to exhaust is permissible where "it is clear on the face of the complaint that the plaintiff did not satisfy the PLRA exhaustion requirement." *Williams*, 829 F.3d at 122; *see also Parris v. N.Y.S. Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 361 (S.D.N.Y. 2013).

Nevertheless, an inmate need not exhaust administrative remedies if those remedies are unavailable. *See Hydara v. Burger*, No. 14-CV-1415 (KMK), 2018 WL 1578390, at *4 (S.D.N.Y. Mar. 29, 2018); *see also Williams v. Annucci*, No. 16-CV-7288 (NSR), 2018 WL 3148362, at *7–8 (S.D.N.Y. June 27, 2018). An administrative remedy is functionally unavailable when (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859–60. The Second Circuit has explained that, where a prisoner provides a grievance to a correctional officer who never files it, an administrative remedy can be "unavailable" if the regulations "do not adequately outline the process to appeal or otherwise exhaust administrative remedies." *Williams*, 829 F.3d at 124.

Plaintiff alleges that he filed a grievance, GH-84096-16, on September 12, 2016. (*See* Compl., Details of the Facts, at ¶ 6 & Ex. A.) Plaintiff further alleges that completed the second step of the administrative grievance process by appealing this grievance to the superintendent of the facility. (*See id.* at ¶¶ 17, 23.) Third, Plaintiff alleges that he appealed the grievance to the CORC. (*See id.* at ¶¶ 25.) Plaintiff admits that as of the filing of the Complaint he had not received a decision as to his relevant grievance from CORC, but contends that his failure to comply with this requirement is excused because CORC's response was beyond the timeframe provided by DOCCS directives. (Id. ¶¶ 26–27.) The CORC appeal was submitted on March 23, 2017, and Plaintiff filed the instant complaint approximately August 31, 2017. (*Id.*) Plaintiff has clarified that after he was put on parole, he never received an answer to his CORC appeal. (*See* Plaintiff's Reply Mem. of Law in Opp. to Defendants' Motion to Dismiss ("Pl. Reply Opp."), ECF No. 37,

at 2 (dated June 30, 2019).) As such, Plaintiff's CORC appeal has been pending for over two years.

District courts within this Circuit are split as to whether a delay by CORC constitutes unavailability that would excuse a plaintiff from the exhaustion requirement. Some courts have found that a delay by CORC in responding to an appeal does not constitute unavailability that would excuse a plaintiff's failure to exhaust.[1] Other courts have found that it does, particularly where the delay is lengthy.[2] Based upon a review of the specific facts alleged here—where Plaintiff's appeal has been pending before the CORC for over two years—the Court finds Plaintiff's administrative remedy to be functionally unavailable under the third situation articulated in *Ross*. *See* 136 S. Ct. at 1859–60 (remedy unavailable where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or

---

[1] *See Berkley v. Ware*, No. 16 Civ. 1326, 2018 WL 3736791, at *6 (N.D.N.Y. Jul. 6, 2018) (finding five-month delay by CORC in rendering decision on appeal did not excuse the plaintiff from exhaustion requirement); *Loccenitt v. Labrake*, No. 14 Civ. 6703, 2018 WL 826850, at *3 (W.D.N.Y. Feb. 12, 2018) (finding that a delay of over thirty days by CORC in rendering a decision on a plaintiff's appeal is not a defense to the exhaustion requirement); *Couvertier v. Jackson*, No. 12 Civ. 1282, 2014 WL 2781011, at *5 (N.D.N.Y. Jun. 19, 2014) (holding that waiting five months for a decision from CORC does not constitute a special circumstance that would justify the plaintiff filing a lawsuit before fully exhausting all available remedies).

[2] *See Lovell v. McAuliffe*, No. 918CV0685TJMCFH, 2019 WL 4143361, at *5 (N.D.N.Y. May 1, 2019), *report and recommendation adopted*, No. 9:18-CV-0685, 2019 WL 4142593 (N.D.N.Y. Aug. 30, 2019) (finding exhaustion remedies unavailable where CORC failed to respond until almost two years after grievance filed); *Bell v. Napoli*, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018) (finding administrative remedy unavailable where "CORC appears to have ignored [plaintiff's] grievance until after he filed the lawsuit, and it has apparently continued to ignore his grievance to this day"); *High v. Switz*, No. 917CV1067LEKDJS, 2018 WL 3736794, at *5–6 (N.D.N.Y. July 9, 2018), *report and recommendation adopted sub nom. High v. PA Switz*, No. 917CV1067LEKDJS, 2018 WL 3730175 (N.D.N.Y. Aug. 6, 2018) (finding plaintiff's failure to exhaust excused where CORC neglected to respond to appeal for a year); *Rodriguez v. Reppert*, No. 14-CV-671, 2016 WL 6993383, at *1–3 (W.D.N.Y. Nov. 30, 2016) (denying motion for summary judgment for failure to exhaust where CORC neglected to decide the plaintiff's appeal for three months); *Henderson v. Annucci*, No. 14 Civ. 445A, 2016 WL 3039687, at *10 (W.D.N.Y. Mar. 14, 2016) ("Since plaintiff has been awaiting a decision from CORC for more than two years with respect to his grievance, . . . such an administrative remedy is no longer available to him for purposes of exhaustion under the PLRA."); *Rossi v. Fischer*, No. 13-CV-3167, 2015 WL 769551, at *6 (S.D.N.Y. Feb. 24, 2015) ("Because [CORC] failed to respond to plaintiff's grievance within the 30 day time limit set by regulation" and did not decide the plaintiff's appeal until more than four months after it was filed, "administrative remedies were not available to the plaintiff and dismissal for failure to exhaust is not appropriate."); *Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302, *6 (S.D.N.Y. 2012) (finding plaintiff's failure to exhaust excused where CORC responded to appeal two months after plaintiff commenced suit).

intimidation"); *see also Bell v. Napoli*, No. 9:17-CV-850 (ATB), 2018 WL 6506072, at *7 (N.D.N.Y. Dec. 11, 2018) ("[B]y ignoring an inmate's appeal, as it appears to have done in this case, the CORC could delay a plaintiff's exhaustion indefinitely, making the remedy 'unavailable' by thwarting plaintiff's attempt to exhaust."). "When a prisoner complies with all of the administrative requirements and makes a good-faith effort to exhaust, he should not be denied the opportunity to pursue his grievance in federal court simply because the final administrative decision maker has neglected to issue a final administrative determination." *Peoples v. Fischer*, No. 11 Civ. 2694, 2012 WL 1575302, *6 (S.D.N.Y. 2012) (internal citations omitted). Plaintiff's failure to wait for CORC's appeal determination before filing the instant action is therefore excused.

## II. First Amendment Access to Court Claims

### a. The Interstate Agreement on Detainers

Plaintiff alleges that while he was incarcerated at Green Haven Correctional Facility, which is located in Stormville, New York, he faced outstanding criminal charges in the state of Connecticut. (*See* Compl., Details of the Facts, at ¶ 1 & Ex. B.) Plaintiff sought to invoke the Interstate Agreement on Detainers ("IAD"), 18 U.S.C.§ App. 2, which establishes procedures for the resolution of one state's outstanding charges against a prisoner of another state. Specifically, the IAD contains provisions that permit a prosecutor in one jurisdiction to acquire the presence of a defendant for trial when that defendant is imprisoned in another jurisdiction (*i.e.*, the "custodial" jurisdiction). *Id.* Once the prosecutor places a detainer on the defendant,[3] the defendant "shall be

---

[3] The term "detainer" is not defined anywhere in the statute, but has been defined by the Supreme Court as "a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking . . . either to hold the prisoner for the agency or to notify the agency when the release of the prisoner is imminent." *Reed v. Farley*, 512 U.S. 339, 342 n.1 (1994) (quoting *Carchman v. Nash*, 473 U.S. 716, 719 (1985)).

brought to trial within one hundred and eighty days" after providing the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made. 18 U.S.C.A. § App. 2 § 2; *see also* N.Y. Crim. Proc. Law § 580.20, Art. III(a). Pursuant to Article III of the IAD, upon receipt of the detainer, the official having custody of the prisoner must inform the prisoner of the detainer and of his or her right to request final disposition of the charge. N.Y. Crim. Pro. § 580.20, Art. III. If the prisoner makes such a request, he or she is transferred to the receiving state for trial. *Id.* Under Article IV of the IAD, the prosecuting agency in the receiving state may file to transfer the prisoner to the receiving state for trial. *See* N.Y. Crim. Pro. § 580.20, Art. IV.

Crucially, a detainer must be lodged against a prisoner in order to trigger the procedures outlined by the IAD. *See* N.Y. Crim. Proc. Law § 580.20, Art. III(a). Here, the prosecuting state, Connecticut, elected not to file a detainer and advised Green Haven that they were not going to pick up Plaintiff upon his release. (*See* Dawkins Decl., ECF No. 33, at 4.)[4] Defendants maintain that the provisions of the IAD were never activated because the New Britain, Connecticut State Attorneys' office never lodged a detainer requesting Plaintiff's transfer to their jurisdiction to respond to his criminal charges there. (*See id.*) The Court agrees.

Because the state of Connecticut never lodged a detainer against Plaintiff, he therefore did not fall under the ambit of the IAD. *See Prince v. Heath*, No. 11 Civ. 5317, 2012 WL 2422563, at *4 (S.D.N.Y. June 27, 2012) (motion to dismiss granted where detainer not lodged and plaintiff failed to show that the provisions of the IAD had been activated); *see also LaTray v. Holder*, No.

---

[4] Letter dated October 16, 2017 from Michael J. Isko, Esq. to Plaintiff. The letter was included as an exhibit to Plaintiff's motion to dismiss referenced in the Complaint, Details of the Facts, ¶ 28, which the Court considers in light of Plaintiff including Mr. Isko's previous correspondence as part of his Complaint. *See Smith v. Miller*, No. 15 Civ. 9561, 2017 WL 4838322, at *5 (S.D.N.Y. Oct. 23, 2017) (on motion to dismiss, courts can consider documents integral to the complaint).

5:10-CV-0915 NPM/DEP, 2010 WL 5070926, at *5 (N.D.N.Y. Dec. 7, 2010) (observing that, where plaintiff did not assert that any state prosecuting authority had lodged a detainer against him, "it appears . . . the [IAD] does not apply, and thus does not yet give rise to the remedies available thereunder.").

### b. Access to the Courts

The Complaint, liberally construed, presents access to the courts claims against Defendants Lioidice, Collado, and Griffin. Plaintiff alleges that the Defendants, through their inaction, delayed the filing of his IAD forms, which the Court interprets as an allegation that they violated his First Amendment rights. For the reasons stated below, the Court finds these claims to be deficiently pleaded.

Inmates have a "constitutional right of access to the courts" under the First Amendment. *Bourdon v. Loughren*, 386 F.3d 88, 92–93 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003)). "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).

Because Plaintiff has failed to establish that he had a cognizable legal claim under the IAD, Defendants argue that he does not allege any interference with a non-frivolous legal claim or an actual injury. Defendants therefore argue that Plaintiff's access to the courts claim should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter

jurisdiction and Rule 12(b)(6) for failure to state a claim. (*See* Defs. Mem. in Supp. of Motion to Dismiss ("Defs. Mem."), ECF No. 34, at 1.)

Plaintiff contends that even though a detainer had not been lodged against him, that he still had an open case which "effect[ed] [his] classification." (*See* Pl. Mem. in Opposition to Motion to Dismiss ("Pl. Opp."), ECF No. 35, at 3.) He further argues that the delay "prevented [him] from resolving [his] outstanding warrant before [his] release." (*See* Pl. Reply Opp. at 5.) He also alleges that the acts of Defendants prevented him from serving his sentence concurrently in Connecticut. (*See* Compl., Details of the Facts ¶ 33). But Plaintiff has not articulated a plausible connection between the delayed IAD forms and these supposed harms. At bottom, Plaintiff was not positioned to avail himself of the IAD. *See Prince*, 2012 WL 2422563, at *4. Moreover, the determination whether a sentence will run consecutively or concurrently is discretionary in the Connecticut courts. Conn. Gen. Stat. § 53a-37 ("[S]entences imposed by the court shall run either concurrently or consecutively with respect to each other . . . in such manner as the court directs at the time of sentence"); *State v. Banks*, 59 Conn. App. 145, 149 (2000) ("The determination whether to impose concurrent or consecutive sentences is a matter within the sound discretion of the trial court.").

As such, the Court concludes that Plaintiff's allegations fail to state an actual injury required to establish an access to court claim. *See Dennis v. Costello*, 189 F.3d 460 (2d Cir. 1999) (affirming dismissal of access to courts claim where plaintiff alleged prison officials delayed filing IAD paperwork by approximately 60 days, but plaintiff failed to show an actual injury); *Duff v. Coughlin*, 794 F. Supp. 521, 524 (S.D.N.Y. 1992) (dismissing claim that prison officials had destroyed plaintiff's legal materials where plaintiff failed to "identify any actual prejudicial effects on plaintiff's legal actions"); *see also Bellezza v. Holland*, 730 F. Supp. 2d 311, 315 (S.D.N.Y. 2010) (claim dismissed for failure to allege frustration of efforts to pursue a nonfrivolous claim);

*Amaker v. Haponik*, No. 98 Civ. 2663, 1999 WL 76798, at *3 (S.D.N.Y. Feb. 17, 1999) (dismissing claim where plaintiff identified only hypothetical injuries resulting from interference with legal mail). Plaintiff's access to courts claims are therefore dismissed without prejudice to replead additional facts that would plausibly allege that a detainer had been lodged against him and that he was actually injured by the alleged delay in processing the IAD forms. *See Barnes v. United States*, 204 Fed. App'x 918, 919 (2d Cir. 2006) (recognizing that a *pro se* complaint "should not be dismissed without granting leave to replead at least once when [a liberal] reading gives any indication that a valid claim might be stated" (quotations omitted)). [5]

## III. Retaliation Under the First Amendment

Plaintiff further claims that, as a result of Plaintiff's filing of grievance GH-84096-16, Lioidice subjected him to retaliatory action in violation of the First Amendment. (*See* Compl. at ¶ 2.) To properly assert a First Amendment retaliation claim, a plaintiff has the burden of demonstrating: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation . . . Otherwise the retaliatory act is simply *de minimis* and therefore outside the ambit of constitutional protection." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (quoting *Dawes v.*

---

[5] Because the non-activation of the IAD is dispositive to these claims, the Court does not reach Defendants' arguments concerning Defendants' personal involvement in the alleged wrongdoing, Defendants' qualified immunity, and Defendants' immunity under the Eleventh Amendment. *See Prince v. Heath*, No. 11 CIV. 5317 JPO, 2012 WL 2422563, at *4 (S.D.N.Y. June 27, 2012).

*Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema*, 534 U.S. 506 (2002)).

"Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before [a retaliatory] action taken against them is considered adverse." *Id.* In addition, the "casual connection" element requires plaintiffs to prove that an adverse action relates to protected First Amendment activity—that is, the plaintiff must present evidence from which a jury could conclude that the plaintiffs protected First Amendment activity was "a substantial or motivating factor" in the prison official's adverse action against the plaintiff. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996). "To survive a motion to dismiss, such claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.'" *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)).

The Second Circuit has repeatedly held that a court must assess a claim of retaliation with "skepticism and particular care" because such claims are "easily fabricated" by inmates. *Dawes*, 239 F.3d at 491. Such claims create a "substantial risk of unwarranted judicial intrusion into matters of general prison administration" because:

> virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act. . . . Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.

*Id.* (internal citations and quotations omitted).

Here, Plaintiff alleges that in response to Plaintiff's grievance, Lioidice falsely stated that Plaintiff failed to show up for his call outs and further delayed the processing of his IAD forms an additional 67 days. (*See* Compl., Details of the Facts, ¶ 21.) Thus, it can be inferred that Plaintiff

alleges his participation in the prison grievance process constituted protected speech/conduct. This satisfies the first element of a retaliation claim, as "it is well established that 'retaliation against a prisoner for pursuing a grievance violates the right to petition government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.'" *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996)).

Plaintiff's pleading falters, however, with respect to the second element: that Lioidice took adverse action against Plaintiff. Even considered in the light most favorable to Plaintiff, the allegation of a 60-day delay in sending the IAD forms, without more, does not rise to the level of an adverse action. With respect to retaliation claims, "a delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation." *Anderson v. Bender*, No. 15-CV-6735-FPG, 2019 WL 3252914, at *4 (W.D.N.Y. July 19, 2019) (quoting *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995)). Furthermore, Plaintiff admits that he was never disciplined as a result of Lioidice's alleged false statement. (*See* Compl., Details of the Facts, ¶ 34.) Accordingly, because Plaintiff's retaliation claim fails to plausibly allege that he suffered an adverse action, it is dismissed without prejudice. To the extent Plaintiff is able to present additional facts that would plausibly allege an adverse action taken against him that is causally connected to his grievances, Plaintiff is granted leave to replead his claim. *See Barnes*, 204 Fed. App'x at 919.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in its entirety. Plaintiff's access to the courts claims against Defendants Lioidice, Griffin, and Collado are

dismissed without prejudice. Plaintiff's retaliation claim against Defendant Lioidice is also dismissed without prejudice.

Should Plaintiff choose to reassert his claims that were dismissed without prejudice, Plaintiff may file an Amended Complaint consistent with this Opinion and Order on or before April 3, 2020. Because Plaintiff's Amended Complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wishes to remain must be included in the Amended Complaint. An Amended Civil Rights Complaint form is attached to this Opinion. If Plaintiff elects to file an Amended Complaint, Defendants shall have thirty days from the date of Plaintiff's filing to respond.

Failure to file an Amended Complaint within the time allowed, and without good cause to excuse such failure, will result in dismissal of Plaintiff's Complaint with prejudice.

Accordingly, the Clerk of the Court is respectfully directed to terminate Defendants' Motion to Dismiss at ECF No. 31. The Clerk of the Court is further directed to mail a copy of this Opinion to Plaintiff at his last address listed on ECF and file proof of service on the docket.

Dated:  March 2, 2020                 SO ORDERED:
        White Plains, New York

NELSON S. ROMÁN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

_____

Write the full name of each plaintiff.

-against-

_____

_____

_____

_____

Write the full name of each defendant. If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed above must be identical to those contained in Section IV.

_____CV_____

(Include case number if one has been assigned)

**COMPLAINT**

(Prisoner)

Do you want a jury trial?
☐ Yes   ☐ No

---

**NOTICE**

The public can access electronic court files. For privacy and security reasons, papers filed with the court should therefore *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule of Civil Procedure 5.2.

## I.  LEGAL BASIS FOR CLAIM

State below the federal legal basis for your claim, if known. This form is designed primarily for prisoners challenging the constitutionality of their conditions of confinement; those claims are often brought under 42 U.S.C. § 1983 (against state, county, or municipal defendants) or in a "*Bivens*" action (against federal defendants).

☐  Violation of my federal constitutional rights

☐  Other: _____

## II.  PLAINTIFF INFORMATION

Each plaintiff must provide the following information. Attach additional pages if necessary.

---

First Name            Middle Initial            Last Name

---

State any other names (or different forms of your name) you have ever used, including any name you have used in previously filing a lawsuit.

---

Prisoner ID # (if you have previously been in another agency's custody, please specify each agency and the ID number (such as your DIN or NYSID) under which you were held)

---

Current Place of Detention

---

Institutional Address

---

County, City                            State                    Zip Code

## III.  PRISONER STATUS

Indicate below whether you are a prisoner or other confined person:

☐  Pretrial detainee
☐  Civilly committed detainee
☐  Immigration detainee
☐  Convicted and sentenced prisoner
☐  Other: _____

## IV.    DEFENDANT INFORMATION

To the best of your ability, provide the following information for each defendant. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are identical to those listed in the caption. Attach additional pages as necessary.

Defendant 1:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 2:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 3:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

Defendant 4:

First Name       Last Name       Shield #

Current Job Title (or other identifying information)

Current Work Address

County, City       State       Zip Code

## V.    STATEMENT OF CLAIM

Place(s) of occurrence:  _____

Date(s) of occurrence:  _____

**FACTS:**

State here briefly the FACTS that support your case. Describe what happened, how you were harmed, and how each defendant was personally involved in the alleged wrongful actions. Attach additional pages as necessary.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**INJURIES:**

If you were injured as a result of these actions, describe your injuries and what medical treatment, if any, you required and received.

_____

_____

_____

_____

_____

_____

## VI.     RELIEF

State briefly what money damages or other relief you want the court to order.

_____

_____

_____

_____

_____

_____

_____

## VII. PLAINTIFF'S CERTIFICATION AND WARNINGS

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I understand that if I file three or more cases while I am a prisoner that are dismissed as frivolous, malicious, or for failure to state a claim, I may be denied *in forma pauperis* status in future cases.

I also understand that prisoners must exhaust administrative procedures before filing an action in federal court about prison conditions, 42 U.S.C. § 1997e(a), and that my case may be dismissed if I have not exhausted administrative remedies as required.

I agree to provide the Clerk's Office with any changes to my address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

_____          _____
Dated                                     Plaintiff's Signature

_____
First Name                    Middle Initial          Last Name

_____
Prison Address

_____
County, City                         State                 Zip Code

Date on which I am delivering this complaint to prison authorities for mailing:  _____