```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| STEVEN L. SMITH,<br><br>                          Plaintiff,<br><br>-against-<br><br>MICHELLE LIOIDICE,<br><br>                          Defendant. | **MEMORANDUM OPINION**<br>**AND ORDER**<br><br>17-CV-07028 (PMH) |

PHILIP M. HALPERN, United States District Judge:

    Steven L. Smith ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Michelle Lioidice ("Lioidice") for allegedly: (1) denying him access to the courts; and (2) retaliating against him in violation of his First Amendment rights.[1]

    Plaintiff filed his original Complaint on September 14, 2017, asserting these claims against defendants Lioidice, Warden Griffin, and Dep. Collado. (Doc. 2, "Compl."). All three defendants moved to dismiss the Complaint on June 17, 2019. (Doc. 31). On March 2, 2020, Judge Román issued an Opinion and Order granting that motion to dismiss in its entirety. (Doc. 38, "Román Order"). Plaintiff, however, was given leave to file an Amended Complaint by May 6, 2020. (*Id.* at 16-17; Doc. 42). On April 3, 2020, this case was reassigned to this Court.

    Plaintiff filed his Amended Complaint on April 13, 2020. (Doc. 44). Plaintiff also filed a supplement to his Amended Complaint on April 23, 2020. (Doc. 45). On May 5, 2020, the Court struck both documents from the record for failure to comply with Judge Román's Opinion and Order. (Doc. 49). Specifically, the Court found that "Plaintiff's Amended Complaint and

---

[1] As of the filing of the Second Amended Complaint, Plaintiff was incarcerated at Berkshire County Jail and House of Correction in Pittsfield, Massachusetts. (SAC ¶ 3). The events underlying the constitutional violations alleged here, however, occurred while Plaintiff was incarcerated at Green Haven Correctional Facility ("Green Haven") in Stormville, New York. (Román Order at 2, 10).

supplement do not allege or assert facts and claims, but instead include Plaintiff's purported arguments." (*Id*. at 1). The Court *sua sponte* granted Plaintiff a thirty-day extension of time to file a Second Amended Complaint, which Plaintiff did not timely file. (*Id*.). On August 5, 2020, the Court issued an Order to Show Cause why this action should not be dismissed with prejudice for want of prosecution under Federal Rule of Civil Procedure 41(b). (Doc. 51). Defendant did not respond to the Court's Order to Show Cause.

On August 28, 2020, Plaintiff filed a Second Amended Complaint. (Doc. 52, "SAC"). The Second Amended Complaint reasserts the same claims as the original Complaint, but only names Lioidice as a defendant. (*Id*.).[2] On October 2, 2020, Lioidice moved to dismiss the Second Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 56; Doc. 57, "Def. Br."). Plaintiff filed his opposition on October 14, 2020. (Doc. 58). Lioidice filed her reply on October 23, 2020. (Doc. 59).

For the following reasons, Lioidice's motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiff was incarcerated at Green Haven for convictions of burglary in the third degree and grand larceny in the fourth degree.[3] While incarcerated at Green Haven, Plaintiff had an outstanding warrant in Newington, Connecticut. (SAC ¶ 9). The district attorney in Newington "wrote [Plaintiff] a letter stating that he could not act" on the outstanding warrant "until he received

---

[2] Because the Second Amended Complaint did not name Warden Griffin and Dep. Collado as defendants, they were terminated from this action on September 1, 2020.

[3] "The Court . . . takes judicial notice of information obtained via the New York State Department of Corrections and Community Supervision [ ] Inmate Lookup System . . . ." *Rosario v. New York City*, No. 12-CV-4795, 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013); *see also Tribble v. City of N.Y.*, No. 10-CV-8697, 2013 WL 69229, at *1 n. 1 (S.D.N.Y. Jan. 3, 2013); *Williams v. City of N.Y.*, No. 07-CV-3764, 2008 WL 3247813, at *2 n. 3 (S.D.N.Y. Aug. 6, 2008).

[Plaintiff's] IAD paperwork." (*Id.*).[4] Plaintiff forwarded the letter to Lioidice—the "records supervisor" at Green Haven—assuming that she "would return [his] legal letter and file the paperwork." (*Id.* ¶¶ 2, 10). Lioidice had previously sent paperwork on Plaintiff's behalf in connection with another outstanding warrant of Plaintiff's in Waterbury, Connecticut. (*Id.* ¶ 18). That case was subsequently dismissed. (*Id.*). Plaintiff hoped that his Newington case would be dismissed as well. (*Id.*). But Lioidice did not file the IAD paperwork upon Plaintiff's request; nor did she return Plaintiff's letter. (*Id.* ¶¶ 12-13). Instead, Plaintiff claims that Lioidice "ignored [him] for months." (*Id.* ¶ 13).

Plaintiff subsequently filed a grievance against Lioidice. (*Id.* ¶ 14). She was thereafter "directed to file the paperwork ASAP by the grievance chairperson as well as by Warden Griffin." (*Id.*). But Plaintiff claims that she still did not file the paperwork. (*Id.*). Rather, Lioidice "wrote a letter telling [Plaintiff] that she had summoned [him] to [the administrative] offices numerous times[,] but [he] failed to show up." (*Id.* ¶ 16). According to Plaintiff, this version of events was untrue, because he could not have "refuse[d] a callout at Green Haven" without suffering disciplinary consequences. (*Id.*).

Lioidice told Plaintiff in another letter that he "will find out at the time of [his] release whether [he has] a warrant and will be taken into custody"—a remark that allegedly "reveal[ed] [Lioidice's] animosity and bias towards [him]." (*Id.* ¶¶ 19, 25). Although Plaintiff "cannot prove it," he insists that Lioidice delayed filing the IAD paperwork because she was "upset" about Plaintiff's grievance against her, and about the fact that she "was ordered to do something [that]

---

[4] Although not defined in the Second Amended Complaint, Plaintiff explained in his original complaint that "IAD" refers to the Interstate Agreement on Detainers. (Compl. at 1); *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-5600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018) (finding original complaint in *pro se* action "properly considered by the court" on motion to dismiss third amended complaint), *aff'd*, 765 F. App'x 470 (2d Cir. 2019).

3

she did not want to do." (*Id.* ¶ 23). Lioidice eventually filed the IAD paperwork, but not "until the issue was moot." (*Id.* ¶ 25).

Plaintiff appealed his grievance, to which there was allegedly no response. (*Id.* ¶¶ 15, 20). He seeks monetary damages. (*Id.* ¶ 26).

## STANDARD OF REVIEW

"'The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are substantively identical.'" *Feldheim v. Fin. Recovery Servs., Inc.*, 257 F. Supp. 3d 361, 365 (S.D.N.Y. 2017) (quoting *Gonzalez v. Option One Mortg. Corp.*, No. 12-CV-1470, 2014 WL 2475893, at *2 (D. Conn. June 3, 2014) (internal quotation marks omitted)). "'In deciding both types of motions, the Court must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff.'" *Id.* (quoting *Gonzalez*, 2014 WL 2475893, at *2 (internal quotation marks omitted)). "However, '[o]n a Rule 12(b)(1) motion, . . . the party who invokes the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6).'" *Id.* (quoting *Gonzalez*, 2014 WL 2475893, at *2); *see also Sobel v. Prudenti*, 25 F. Supp. 3d 340, 352 (E.D.N.Y. 2014) ("In contrast to the standard for a motion to dismiss for failure to state a claim under Rule 12(b)(6), a plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." (internal quotation marks omitted)). "This allocation of the burden of proof is '[t]he only substantive difference' between the standards of review under these two rules." *Id.* at 365-66 (quoting *Smith v. St. Luke's Roosevelt Hosp.*, No. 08-CV-4710, 2009 WL 2447754, at *9 n.10 (S.D.N.Y. Aug. 11, 2009), *adopted by* 2009 WL 2878093 (S.D.N.Y. Sept. 2, 2009)).

1. Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a motion to dismiss under Rule 12(b)(1) at the pleadings stage, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When "the defendant moves for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-6547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

2. Federal Rule of Civil Procedure 12(b)(6)

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id*. The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (internal quotation marks omitted)). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). While "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal* . . . dismissal of a *pro se* complaint

6

is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-6718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations . . . in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)).

Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court also has a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

## ANALYSIS

I. <u>Section 1983 Claims</u>

Construing the Second Amended Complaint liberally, Plaintiff asserts two claims for relief under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). As such, in each permutation of a claim under that law, "a plaintiff must demonstrate: '(1) a right secured by the Constitution or laws of the United States was violated, and (2) the right

was violated by a person acting under color of state law, or a state actor.'" *Town & Country Adult Living, Inc. v. Vill./Town of Mount Kisco*, No. 17-CV-8586, 2019 WL 1368560, at *17 (S.D.N.Y. Mar. 26, 2019) (quoting *Walker v. Clemson*, No. 11-CV-9623, 2012 WL 2335865, at *3 (S.D.N.Y. June 20, 2012)).

The Court will address the viability of Plaintiff's claims for relief *seriatim*.

    A.  <u>Access to the Courts (First Amendment)</u>

"Prisoners . . . 'have a constitutional right of access to the courts.'" *Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004) (quoting *Bounds v. Smith*, 430 U.S. 817, 821 (1977)). "[T]o establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that the defendant's conduct was deliberate and malicious, and that the defendant's actions resulted in an actual injury to the plaintiff." *Collins v. Goord*, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) (citing *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir.2003)). "To show actual injury, the plaintiff must demonstrate that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim." *Id*. (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). "Requiring an allegation of actual injury 'ensures that courts provide relief to claimants only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches.'" *Bellezza v. Holland*, 730 F. Supp. 2d 311, 314 (S.D.N.Y. 2010) (quoting *Casey*, 518 U.S. at 349).

In the March 2, 2020 Opinion and Order, Judge Román dismissed Plaintiff's access-to-courts claim for "fail[ure] to state an actual injury." (Román Order at 13). Plaintiff, however, was granted leave to file an amended complaint to address this deficiency. (*See id*.). In doing so, Judge Román instructed Plaintiff to "replead additional facts that would plausibly allege that a detainer

8

had been lodged against him and that he was actually injured by the alleged delay in processing the IAD forms." (*Id.*). Plaintiff has not complied with these instructions.

First, although Plaintiff makes passing references to his "IAD paperwork" (SAC ¶¶ 9, 22), he does not state whether a detainer "had been lodged against him." (Román Order at 14).

Second, and most notably, Plaintiff has not alleged any injury resulting from Lioidice's delay. Absent a showing of "actual injury," Plaintiff lacks "standing to bring a claim for denial of access to the courts." *Bellezza*, 730 F. Supp. 2d at 315; *see also Collins*, 581 F. Supp. 2d at 573 ("Unlike prisoners who bring a claim for the violation of a constitutionally protected right, who have standing to assert that right . . . prisoners who bring a claim for the violation of a derivative right of access to the courts must demonstrate 'actual injury' in order to have standing." (citing *Benjamin v. Fraser*, 264 F.3d 175, 185 (2d Cir. 2001)). Accordingly, Plaintiff's access-to-courts claim is dismissed for want of subject matter jurisdiction. *See Gosain v. Texplas India Priv. Ltd.*, 393 F. Supp. 3d 368, 374 (S.D.N.Y. 2019) ("Standing is an essential component of subject matter jurisdiction."); *see also Farina v. Metro. Transport. Auth.*, 409 F. Supp. 3d 173, 190 (S.D.N.Y. 2019) ("A district court must dismiss a complaint for lack of subject matter jurisdiction where a plaintiff does not have constitutional standing." (citing *Cortlandt St. Recovery Corp. v. Hellas Telecomm., S.A.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015)).

B. Retaliation (First Amendment)

"[T]o sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected; (2) that the defendant took adverse action against the plaintiff; and (3) that there was a causal connection between the protected speech and the adverse action." *Handle v. Alexander*, No. 10-CV-9235, 2011 WL 1226228, at *2 (S.D.N.Y. Mar. 22, 2011) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)). An

action is "adverse" when it "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights . . . ." *Ruggiero v. Cty. of Orange*, No. 19-CV-3632, 2020 WL 5096032, at *7 (S.D.N.Y. Aug. 28, 2020) (quoting *Davis*, 320 F.3d at 353). Conduct short of this standard is "simply *de minimis* and . . . outside the ambit of constitutional protection." *Id*. (quoting *Davis*, 320 F.3d at 353). Likewise, under the third element, the "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Bearing in mind that "[c]ourts properly approach prisoner retaliation claims with skepticism and particular care[ ] because virtually any adverse action taken against a prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act," *Davis*, 320 F.3d at 352 (internal quotation marks omitted), "[c]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012) (internal quotation marks omitted).

Judge Román dismissed Plaintiff's retaliation claim for failure to allege the second element, i.e., "that Lioidice took adverse action against Plaintiff." (Román Order at 16). But Plaintiff was given leave to replead "additional facts that would plausibly allege an adverse action taken against him that is causally connected to his grievances." (*Id*.). He has not done so here.

First, although Plaintiff alleges that Lioidice delayed in filing his IAD paperwork, mere delay "does not rise to the level of an adverse action." (Román Order at 16); *see also Davis*, 320 F.3d at 352 ("Mere 'delay in being able to work on one's legal action or communicate with the courts does not rise to the level of a constitutional violation.'" (quoting *Jermosen v. Coughlin*, 877 F. Supp. 864, 871 (S.D.N.Y. 1995))).

Second, even if Lioidice's delay constituted an adverse action, Plaintiff fails to allege that it was "causally connected to his grievances." (Román Order at 16). "To sufficiently allege a causal connection, [Plaintiff's] allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)). Here, Plaintiff not only fails to provide "specific and detailed factual allegations," *Friedl v. City of New York*, 210 F.3d 79, 86 (2d Cir. 2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983)), to support a causal connection between his grievance and Lioidice's alleged delay; he *concedes* that he "cannot prove" that his grievance was a motivating factor. (SAC ¶ 23).

Plaintiff has failed to cure the pleading deficiencies identified by the March 2, 2020 Opinion and Order. Therefore, his retaliation claim is dismissed.

## **CONCLUSION**

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss Plaintiff's Second Amended Complaint with prejudice, as any amendment would be futile. *See Reed v. Friedman Mgt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) ("District courts should frequently provide leave to amend before dismissing a pro se complaint. However, leave to amend is not necessary when it would be futile." (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000))). Additionally, and because Plaintiff has already been given notice and an opportunity to cure the deficiencies in his pleading, but has failed to cure them, leave to replead is also properly denied. *See Cox v. City of New Rochelle*, No. 17-CV-8193, 2020 WL 5774910, at *9 (S.D.N.Y. Sept. 28, 2020).

The Clerk is instructed to terminate the motion sequence pending at Doc. 56, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

SO ORDERED:

Dated: White Plains, New York
   June 30, 2021

_____
Philip M. Halpern
United States District Judge